# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN A. TRAILL,

    Plaintiff,                              CIVIL ACTION NO. 13-13207

  v.                                  DISTRICT JUDGE VICTORIA A. ROBERTS
                                         MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there was substantial evidence on the record that claimant retained the residual functional capacity for a restricted range of light work prior to June 30, 2010, when his insured status expired.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) on May 12, 2010[1], alleging that he had become disabled and unable to work on March 9,

---

[1] Plaintiff filed a prior application for DIB in May 2007, alleging the same disability as the present application, which was denied by the SSA following an administrative hearing before a Law Judge and not pursued further (TR 30). Consequently, res judicata applies to the determination of Plaintiff's condition through the date of the unchallenged administrative decision (March 8, 2010). Bagby v. Harris, 650 F.2d 836 (6th Cir. 1981), cert. denied 454 U.S. 1087 (1981).

2010, at age 40, due to bilateral elbow pain. Benefits were denied initially by the Social Security Administration. A requested <u>de novo</u> hearing was held on December 12, 2011, before Administrative Law Judge (ALJ) David Skidmore. The ALJ subsequently found that the claimant was not entitled to disability benefits because he retained the ability to perform a limited range of light work between March 9, 2010, his alleged onset date of disability, and June 30, 2010, when his insured status for receiving DIB expired. The Law Judge restricted claimant to jobs that did not require the frequent use of either arm for reaching, handling or fingering. The ALJ further determined that the claimant was unable to climb ladders, ropes or scaffolding. The Appeals Council declined to review that decision[2] and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits prior to June 30, 2010, was supported by substantial evidence on the record.

Plaintiff was 42 years old at the time of the administrative hearing. He had been graduated from high school, and had been employed as a welder-fabricator during the relevant past (TR 38). Claimant alleged that he was unable to work due to bilateral elbow pain (TR 53). As a result of the severe pain, Plaintiff testified that he could not engage in most exertional activities. When asked to describe a typical day, claimant stated that he changed the litter for his cats and did some laundry (TR 58). He also stated that he could

---

[2]Where, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. § 404.981. Judicial review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standard in reaching his decision. <u>Warner v. Commissioner</u>., 375 F.3d 387, 390 (6th Cir. 2004); <u>Key v. Callahan</u>, 109 F.3d 270, 273 (6th Cir. 1997). Therefore, the medical evidence submitted by Plaintiff to the Appeals Council (TR 239-251) was not considered by the undersigned.

mow the lawn for about 45 minutes, but needed to take a long break afterwards (TR 58). Plaintiff explained that he helped his mother with the groceries, and was able to carry a light bag filled with groceries into the house (TR 60-61). Claimant could care for his personal needs (i.e. bathing and brushing his teeth), but that he experienced pain when doing so (TR 62-63).

In a written statement in support of her son's application for disability benefits, Plaintiff's mother stated that severe bilateral arm pain prevented him from performing all types of housework (TR 205-206). She believed that her son would be unable to work a full-time job (Tr. 206).

A Vocational Expert, GleeAnn Kehr, classified Plaintiff's past welding work as medium to heavy, skilled activity (TR 68-69). The witness testified that there were no jobs for claimant to perform if his testimony were fully accepted[3] (TR 74). If he were capable of light work, however, there were numerous unskilled rental and counter clerk jobs that he could perform with minimal vocational adjustment (TR 72). These simple work instruction jobs did not require the climbing of ladders, ropes or scaffolds. Only occasional crawling would be necessary. There would be no requirement to reach overhead, and workers would only occasionally handle and finger objects (TR 72).

---

[3] The witness opined that, if claimant needed to be absent from work more than once a month, or required daily rest periods lasting 30 minutes to relieve his pain symptoms, all work activity would be precluded (TR 74).

**B.     ALJ's Findings**

The Administrative Law Judge found that Plaintiff was impaired prior to June 30, 2010, as a result of severe elbow pain, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments[4]. The ALJ recognized that claimant's elbow problems during the relevant period prevented him from working at jobs requiring the frequent reaching, handling and fingering of objects. He was also unable to climb ladders, ropes or scaffolds, and could only occasionally crawl. Nevertheless, he found that the claimant retained the residual functional capacity to perform a significant number of light jobs, as identified by the Vocational Expert, during the relevant period[5] (TR 32-39).

**C.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining

---

[4]At step three of the sequential evaluation, the ALJ found that Plaintiff's elbow pain did not cause the severity or signs of symptoms necessary to meet the criteria of Listing 1.02B. This listing requires a major dysfunction of "one major peripheral joint in each upper extremity," resulting in an inability to perform fine and gross movements. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 1.02B. The ALJ noted that Plaintiff's impairments did not meet this definition (TR 34-35). In support of this finding, the ALJ relied on Plaintiff's testimony that he continued to be able to feed himself, brush his teeth regularly, bathe himself, change a litter box, lift small groceries, and operate yard implements (TR 34-35, 58-63). Contrary to Plaintiff assertion, I suggest that the ALJ correctly found that Plaintiff's elbow pain did not meet Listing 1.02B because he remained capable of performing both gross and fine hand and finger movements.

[5]Plaintiff contends that his obesity "affected his ability to walk and to breathe and should have been taken into account in the ALJ's determination of Plaintiff's RFC" (Plaintiff's Brief in Support of Motion for Summary Judgment at p. 20). The ALJ acknowledged that Plaintiff's weight stressed his knees greatly (TR 34). However, the ALJ noted that record did not contain a diagnosis from an acceptable medical source with respect to claimant's knees or respiratory system. In fact, the claimant's treating sources do not cast any doubt on his ability to stand for at least six hours in an eight-hour workday, even with the increased stress of obesity (TR 34, 497-504).

whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### D.    Insured Status Requirements for DIB Benefits

A "period of disability" can only commence while an applicant is fully insured. 42 U.S.C. § 416(I)(2). The parties agree that the Plaintiff's insured status for purposes of receiving DIB benefits expired on June 30, 2010, and thus he cannot be found disabled unless he can establish a disability prior to that date. Gibson v. Secretary, 678 F.2d 653, 654 (6th Cir. 1982). Evidence relating to a later time period is only minimally probative, Siterlet

v. Secretary, 823 F.2d 918, 920 (6th Cir. 1986), and is only considered to the extent it illuminates claimant's health before the expiration of insured status. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). In other words, regardless of the seriousness of his present disability, Plaintiff must prove that he was disabled during the approximate four month period between March 9, 2010, the res judicata date resulting from the denial of his previous application for benefits, and June 30, 2010, when his insured status for purposes of receiving DIB expired. Garner v. Heckler, 745 F.2d 383, 390 (6th Cir. 1984).

E.    **Discussion and Analysis**

After review of the record, I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of light work between March and June 2010. The medical evidence, as a whole, fails to provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from his elbow pain[6].

The medical record discloses that in October 2006, Plaintiff was urged by a treating physician, Dr. Michael Fitzsimmons, to undergo vocational rehabilitation. Dr. Fitzsimmons believed that such services could help claimant return to work. The only restriction the doctor placed upon claimant was that the job "does not require a lot of stress and strain on

---

[6]Plaintiff asserts that the ALJ erred when he did not include his depression as a severe impairment. In order to have a severe impairment, a claimant must show that his impairment "is expected to result in death", or that it "lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 404.1509. Plaintiff has failed to show that depression was consistently diagnosed for any 12-month period, or that it was expected to result in death. Moreover, as the ALJ noted, Plaintiff did not allege disabling depression in either his previous application, or when he filed the current application for disability benefits (TR 33, citing Tr. 176).

6

the extremities" (TR 449). Dr. Fitzsimmons based his opinion upon clinical examinations indicating that Plaintiff enjoyed full range of motion in his elbows following surgeries in 2004 and 2005 (TR 360, 449).

The fact that the claimant did not report significant elbow pain during subsequent medical evaluations of his elbows suggests that the earlier surgery did, in fact, help alleviate the pain. Dr. Donald Jones, another treating physician of record, reported that Plaintiff did not complain of elbow or arm pain during visits in December 2005, February 2007, or March 2008 (TR 455-456, 496). Claimant did not return to Dr. Jones' office between June 2008 and February 2009 (TR 496). When Plaintiff did return, he did not seek treatment. Claimant instead asked that his disability paperwork be completed (TR 494). Between June 2009 and April 2010, Plaintiff did not see the doctor very frequently. Dr. Jones did not refer to any objective signs or disabling elbow pain after March 2010 (TR 480-487, 492-496).

Plaintiff underwent an independent consultative examination with Dr. Bharati Sachdev in March 2008 (TR 473-75). Dr. Sachdev noted that there was no obvious swelling, redness, or warmth in either elbow, and only minimal tenderness (TR 475). Plaintiff had a normal range of motion in both elbows, and fairly normal muscle tone and strength (TR 475). Plaintiff could make a fist, but had some limitation in squeezing (TR 475).

Plaintiff relies heavily upon the fact that Drs. Jones and Fitzsimmons later opined in questionnaire responses that he was currently disabled from all work activity (TR 498-499, 502-503). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613

7

F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Drs. Jones and Fitzsimmons offered little objective evidence during the relevant period to support their respective statements of disability[7], their opinion need not have been given any special weight. Miller v. Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

It is the rare case, indeed the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There is evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded

---

[7]The ALJ rejected the doctors' disability statements, setting forth persuasive reasons for doing so (TR 36). The ALJ expressed concern about the lack of medical documentation to support the opinions during the relevant period. As noted by the ALJ, Dr. Fitzsimmons did not see Plaintiff at any time after October 2006, more than five years before he rendered his opinion. The ALJ also gave no weight to Dr. Jones opinion, because treatment records provided by the doctor did not show consistent complaints of elbow pain. This suggested to the ALJ that Drs. Jones and Fitzsimmons disability statements were prepared for the sole purpose of helping the claimant qualify for benefits. Indeed, it appears the doctors' opinion was primarily based on Plaintiff's subjective complaints, rather than the objective medical evidence.

8

lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his significant impairment[8], the Vocational Expert testified that there were numerous unskilled rental and counter clerk jobs that he could perform with minimal vocational adjustment (TR 72). These simple work instruction jobs did not require climbing ladders, ropes or scaffolds. Only occasional crawling would be necessary. There would be no requirement to reach overhead, and workers would only have to perform occasional handling and fingering of objects (TR 72). Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity between March 9. 2010, the alleged onset date, and June 30, 2010, when his insured status expired.

---

[8]Contrary to Plaintiff's assertion, the ALJ's hypothetical question to the vocational expert was not flawed because it did not include all his medically corroborated complaints. While Plaintiff contends that the hypothetical question did not account for his inability to sit or stand for prolonged periods, the ALJ accounted for these problems by restricting Plaintiff to light work that provided a sit-stand option "at will" (TR 27). Plaintiff has not shown that his back condition would cause greater limitations.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

          s/ Charles E. Binder
          CHARLES E. BINDER
Dated: September 22, 2014          United States Magistrate Judge

10